IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 06–cv–01531–EWN

MATTHEW J. FAIRSHTER AND
BENNETT & FAIRSHTER, LLP,

        Case No. 00–23048–SBB

       Appellants.          Chapter 11

v.

STINKY LOVE, INC.,

       Appellee,

IN RE:

NESBIT LEE LACY, a/k/a N. LEE LACY,

       Debtor.

---

### ORDER AND MEMORANDUM OF DECISION

---

     This is a bankruptcy appeal.  Appellants Matthew Fairshter and Bennett & Fairshter, LLP

appeal from a bankruptcy court order issuing sanctions against them.  This court's jurisdiction is

premised upon 28 U.S.C.A. § 158 (West 2007).

### FACTS

     As Appellants themselves admit, this appeal stems from a case with a "sordid, tortured

history."  (Appellant's Br. at 8 [filed Oct. 9, 2006] [hereinafter "Br."].)  However, because

Appellants could not be bothered to set forth any of this sordid torture, the task is left to this

court and Appellee Stinky Love, Inc.  (*Id.* at 5.)  Rather than re-inventing the proverbial wheel, this court looks to another court's findings in laying the factual framework for this case.  *See In re Winslow*, 186 B.R. 716, 721 (D. Colo. 1995) (taking "judicial notice of the bankruptcy court's records and files, as well as those of this court resulting from the many appeals the debtors have taken from the bankruptcy court's rulings").

> The background of the dispute between these parties is a failed movie production. [Appellee], formed by the producers of the movie "Love Stinks," had a contract with Independent Artist Company, LLC ("IAC"), owned by [Debtor Nesbit Lee Lacy], for payment by IAC of $5,000,000 of the movie's marketing budget.  The payment was not made and the revenues from the movie were less than the costs and expenses.

*Lacy v. Stinky Love (In re Lacy)*, 304 B.R. 439, 441 (D. Colo. 2004).  In November 2000, Debtor filed a voluntary petition for Chapter 11 relief pursuant to the United States Bankruptcy Code, 11 U.S.C.A. § 101, *et seq.* (West 2007).  (Appellee's Answer Br. at 3 [filed Oct. 31, 2006] [hereinafter "Answer"].)  Appellee was Debtor's principal creditor and sought payment from Debtor in a California state court action (the "California Litigation"), which was pending when Debtor filed his Chapter 11 petition.  *Lacy*, 304 B.R. at 441.  Appellants represented Debtor in the California case.  (Br. at 5.)

On April 3, 2001, Appellee obtained relief from the automatic stay in order to proceed in the California Litigation.  *In re Nesbit Lee Lacy, a.k.a. N. Lee Lacy*, 297 B.R. 786, 792 (Bankr. D. Colo. 2003).  On July 20, 2001, Appellants applied for authorization to continue to represent Debtor, post-petition, in the California Litigation.  (Answer at 4; App. [filed in Bankr. Ct. July 20, 2001].)  Appellee objected to the application: (1) arguing it was untimely; and (2) underscoring

that Appellants had represented Debtor post-petition for several months in the California

Litigation, but had failed to disclose his bankruptcy filing to Appellee.  (Answer at 4.)  Appellants

evidently abandoned the application and never renewed it.  (*Id.*)  "Despite this," as Appellee puts

it, "and unbeknownst to the [b]ankruptcy [c]ourt, [Appellants] continued to represent the Debtor

in the California [L]itigation."  (*Id.*)

On September 17, 2001, the bankruptcy court approved Debtor's proposed Chapter 11

plan of reorganization (the "Plan").[1]  *Lacy*, 297 B.R. at 792.  Pursuant to the Plan, Debtor was to

liquidate sufficient assets to pay his creditors in full.  *Id.*  On June 26, 2002, the court entered a

final decree in the bankruptcy case.  *Id.*  In August 2002, Debtor sold real property known as the

Tagert Lakes Ranch in keeping with the exercise of the Plan.  (Answer at 5.)  The proceeds from

the sale did not meet Debtor's expectations, evidently because the mortgage lender had demanded

an amount "far in excess of what was actually due."  (*Id.*)  In November 2004, Debtor filed suit

against the lender to recover the difference (the "Mortgage Lender Litigation").  (*Id.*)  In the

meantime, on September 16, 2002, the Superior Court for Los Angeles County entered a final

judgment in the California Litigation, requiring Debtor to pay Appellee $5,735,685.  *Lacy*, 304

B.R. at 441.

---

[1]The bankruptcy court has noted that "Debtor has been uncooperative, unhelpful and routinely avoiding or evading fulfillment of his obligations under the Plan.  Moreover, [] Debtor has proven to be not credible throughout much of this case."  (Order Finding Debtor In Violation of Plan at 3 [filed in Bankr. Ct. July 8, 2005].)  Evidently, the bankruptcy judge found Debtor to be "extraordinarily obstinate, perhaps the most evasive and uncooperative debtor [the judge had] ever seen in [seventeen] years on the bench."  *Bennet & Fairshter, LLP v. Stinky Love, Inv. (In re Lacy*, 335 B.R. 729, 735 (B.A.P. 10th Cir. 2006).

Appellee maintains that it did not learn about the Mortgage Lender Litigation until May 2005.  (Answer at 5.)  On May 11, 2005, citing Debtor's "unfortunate history of misapplying Plan proceeds," Appellee moved the bankruptcy court to order any proceeds from the Mortgage Lender Litigation be deposited into the bankruptcy court's registry, so as to make sure the distribution of the funds would comply with the Plan.  (SLI's Mot. for Order Implementing Plan re: Proceeds of Old Standard Lawsuit at 2 [filed in Bankr. Ct. May 11, 2005] [hereinafter "Plan Mot."].)  On June 8, 2005, Appellants opposed this motion and filed a notice of an attorney lien in this court.  (Answer at 6.)  In essence, Appellants argued that any payment into the bankruptcy court registry should be net of Appellants' contingency fee for the Mortgage Lender Litigation.  (N. Lee Lacy's Opp'n for [sic] Order Implementing Plan re: Proceeds of Old Standard Lawsuit ¶ 14 [filed in Bankr. Ct. June 8, 2005] [hereinafter "Plan Resp."].)  Debtor also filed a separate opposition, attaching a copy of his retainer agreement with Appellants.  (Obj. to SLI's Mot. for Order Implementing Plan re: Proceeds of Old Standard Lawsuit at 2 [filed in Bankr. Ct. June 8, 2005].)  The retainer agreement expressly required Debtor to grant a security interest and lien on the proceeds of the Mortgage Lender Litigation, as well as any other after-acquired property, in order to pay Appellants' attorney fees and expenses incurred in the Mortgage Lender Litigation.  (*Id.*, Ex. 1 ¶ 12 [Retainer Agreement].)  It is no surprise that Appellee took issue with Appellants' June 8, 2005 opposition.  (SLI's Resp. to Lacy's Opp'n for Order Implementing Plan re: Proceeds of Old Standard Lawsuit [filed in Bankr. Ct. June 15, 2005] [hereinafter "Plan Reply"].)  Appellee reasoned that Appellants: (1) were not entitled to post-petition fees because they had abandoned their application and never obtained authorization to represent Debtor; and (2) had

already been designated as *unsecured* creditors, and to enforce the retainer agreement's terms

"would violate not only the Plan but also the rule of absolute priorities, and would be grossly

unfair to Debtor's other [] unsecured allowed claim holders." (*Id.* ¶ 8.)

The bankruptcy court granted Appellee's motion and: (1) ordered any and all proceeds

from the Mortgage Lender Litigation would be deposited in the court's registry in order to be

distributed in keeping with the Plan; and (2) disallowed all post-petition attorney fees because

Appellants had never received authorization to act as Debtor's post-petition counsel. (Order

Granting Mot. to Implement Plan Regarding Proceeds of Old Standard Lawsuit [filed in Bankr.

Ct. July 26, 2005].) Appellants appealed the order, which a bankruptcy appellate panel for the

Tenth Circuit upheld. *In re Lacy*, 335 B.R. 729.

In November 2005, Appellee settled its claims with Debtor (the "Settlement Agreement").

(Br. at 7; Mot. to Approve Lacy Settlement Agreement [filed in Bankr. Ct. Nov. 23, 2005].)

Appellants objected to the Settlement Agreement. (Obj. to Lacy Settlement Agreement [filed in

Bankr. Ct. Dec. 19, 2005] [hereinafter "Settlement Obj."].) The bankruptcy court set a hearing to

take place on February 21, 2006. (Order and Notice of Hr'g [filed in Bankr. Ct. Jan. 20, 2006].)

Appellants did not appear at the hearing. (Mins. [filed in Bankr. Ct. Feb. 21, 2006].) At the

hearing, counsel who were present tendered to the bankruptcy court a copy of a document styled

"Notice of Withdrawal of Objection to Lacy Settlement Agreement." (*Id.*) The document, dated

February 21, 2006 — which, incidentally, was *never filed with the court* — was the first notice

counsel had received of Appellants' withdrawal. (*Id.*) Indeed, the bankruptcy court went to great

lengths to note that counsel "prepared for the hearing because of [Appellants'] [o]bjection." (*Id.*)

The court deemed the objection to be withdrawn and approved the settlement.  (*Id.*; *see also*

Order Approving Settlement Agreement Debtor [sic] [filed in Bankr. Ct. Feb. 21, 2006].)

On March 8, 2006, the bankruptcy court issued an order to show cause, noting, *inter alia*,

that Appellants:

> had acted irresponsibly, recklessly, and with great neglect, as is fully set forth in
> the [bankruptcy appellate panel] [o]pinion.  Specifically, [Appellants were]
> retained by Debtor post-petition and post-confirmation and in the face of a
> confirmed Plan.  In contravention and in violation of the terms of the Plan,
> [Appellants] purportedly took a lien against all of Debtor's property.  [Appellants]
> did so to secure (a) pre-petition legal fees; (b) post-petition, pre-confirmation legal
> fees, with no proper employment under [the bankruptcy statute]; and (c) post-
> confirmation legal fees.  [Appellants] did so without notice to anyone, including
> this [c]ourt, creditors, [Appellee,] and Debtor's bankruptcy counsel.  By their
> actions in taking such lien, [Appellants] violated the Plan and, in effect, attempted
> to defeat the terms of the confirmed Plan or otherwise thwart its implementation.
> [Appellants] acted with full knowledge of the Plan and purposefully to attempt . . .
> to take a lien and to do so in a completely invisible, deceptive fashion.

(Order to Show Cause and Notice of Hearing on Sanctions at 1–2 [filed in Bankr. Ct. Mar. 8,

2006] [hereinafter "Show Cause Order"].)  Additionally, the bankruptcy court found that

Appellants' unfiled withdrawal of their objection to the Settlement Agreement "tendered . . . upon

commencement of the hearing," along with Appellants' failure to appear at the hearing at all,

"resulted in the waste of [c]ourt resources and time and needlessly required [Appellee] and

Debtor to incur attorneys' fees in anticipation of contested hearings."  (*Id.* at 2.)  Accordingly, the

bankruptcy court ordered Appellants to show cause by March 10, 2006 why:

> (a) sanctions should not be imposed upon [Appellants] in the form of attorneys'
> fees expended by counsel for [Appellee] and counsel for Debtor in preparing for a
> contested hearing . . .; (b) this matter should not be referred . . . to the appropriate
> California State Bar Disciplinary Authority for further action; and (c) whether
> other sanctions should be imposed, as appropriate under the circumstances.

(*Id.*)  Despite the stated deadline, Appellants responded to the order on May 9, 2006 — the date

the bankruptcy court had set a hearing on its order.  (Opp'n of Bennett & Fairshter, LLP to Order

to Show Cause and Notice of Hearing on Sanctions [filed in Bankr. Ct. May 9, 2006].)

Appellants argued that: (1) a timely response was impossible; (2) sanctions were not appropriate

under Federal Rule of Bankruptcy Procedure 9011; (3) Appellants "did not engage in any abusive,

unwarranted, or bad faith actions;" and (4) Appellants could not address the court's contemplated

"other sanctions" because "[i]t is difficult to address such unstated issues without notice of them."

(*Id.*)

      After a hearing on the matter — during which Appellants apparently gave testimony that

was "not credible, was internally inconsistent, and contradicted statements made by Debtor's

counsel" — the bankruptcy court found that Appellants' pre-petition legal feels ought be denied

and Appellants ought account for and disgorge all pre-petition and post-petition fees paid, based

on Appellants': (1) continued representation of Debtor despite their failure to obtain authorization

for employment as required under the bankruptcy statute; (2) "furtive taking of an attorney's lien,

post[-]confirmation, on proceeds of property subject to the Debtor's Plan and in violation of that

Plan; (3) "surreptitious violation of the Debtor's Plan and secret preempting, or priming, of other

creditors' distributions under the Plan;" (4) "unprofessional conduct in derogation of their client's

best interests while advancing their own interests" by objecting to the Settlement Agreement, and

(5) creating a conflict of interest with, and adverse consequences to, the Debtor through

Appellants' "failure to consult with or notify Debtor's bankruptcy counsel" of their actions.

(Mem. Opinion and Order [filed in Bankr. Ct. July 28, 2006] [hereinafter "Order"].)  This order

imposing sanctions is the subject of Appellants' appeal, filed October 9, 2006.  (Br.)  On October 31, 2006, Appellee responded to the appeal.  (Answer.)  On November 10, 2006, Appellants filed a reply brief in support of their appeal.  (Appellants' Reply Br. [filed Nov. 10, 2006] [hereinafter "Reply"].)

## ANALYSIS

### 1.    *Standard of Review*

A bankruptcy court may sanction parties pursuant to its inherent authority.  *See Providian Nat'l Bank v. Vitt (In Re Vitt)*, 250 B.R. 711, 723 (Bankr. D. Colo. 2000).  This court reviews a bankruptcy court's imposition of sanctions under an abuse of discretion standard.  *Id.*  "In this circuit, abuse of discretion is defined as 'an arbitrary, capricious, whimsical, or manifestly unreasonable judgment.'"  *In re Rambo*, 209 B.R. 527, 530 (B.A.P. 10th Cir. 1997) (quoting *FDIC v. Oldenburg*, 34 F.3d 1529, 1555 [10th Cir. 1994]).  Accordingly, under the abuse of discretion standard, "a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the balance of permissible choice in the circumstances."  *Joseph v. Lindsey (In re Lindsey)*, 229 B.R. 797, 799 (B.A.P. 10th Cir. 1999) (quoting *Moothart v. Bell*, 21 F.3d 1499, 1504 [10th Cir. 1994]).

### 2.      *Merits of Appellants' Challenge*

Appellants maintain that the bankruptcy court erred by: (1) abusing its discretion in issuing "unduly harsh, unrestrained" sanctions; (2) depriving Appellants of due process with regard to the sanctions; (3) asserting jurisdiction and authority to disallow Appellants' claim for pre-petition attorney fees confirmed in the Plan; and (4) disregarding a lawful attorney's lien.  (Br. at 10.)  The court addresses Appellants' arguments, each less meritorious than the next, below.

### a.      *Preliminary Matters*

For some reason unimaginable to this court, before turning to their substantive legal arguments, Appellants present questionably intelligible arguments concerning their fee agreement and attorney's lien with Debtor.  (*Id.* at 10–13.)  Appellants evidently contest the bankruptcy court's conclusions that:

> [Appellants have] acted irresponsibly, recklessly and with great neglect . . . . Specifically, [Appellants were] retained by Debtor post-petition and post-confirmation and in the face of a confirmed Plan.  In contravention and violation of the Plan, [Appellants] purportedly took a lien against all of Debtor's property.

(*Id.* at 11.)  Appellants maintain that they did not act in bad faith and were not retained "in the face of a confirmed Plan."  (*Id.*)  In support of this mysterious argument, Appellants point to Appellant Fairshter's testimony that he had "a good faith belief" that the proceeds of the Mortgage Lender Litigation were "not a matter that was something [sic] that was to come before the [b]ankruptcy [c]ourt."  (*Id.* at 12.)  Further, Appellants note that they had not received payment under the Plan and Debtor entered into the fee agreement "to repay the sums for services rendered by Appellants for the Debtor."  (*Id.*)  This "argument," a term the court uses loosely, is

perplexing.  How either of these facts speaks to Appellants' motives escapes the court.

Assuredly, Appellants' reference to testimony — which the bankruptcy court apparently found to

be "not credible" and internally inconsistent — does nothing to prove their good faith.  (Order at

8.)  Further, the fact that Debtor had not paid Appellants under the Plan is similarly non-

probative.  As this court understands the case, Debtor made no payments to anyone under the

Plan, which is exactly what led to the Settlement Agreement — that is, the Settlement Agreement

to which Appellants so problematically objected.  (*See* Answer at 7; Settlement Obj. [filed in

Bankr. Ct. Dec. 19, 2005];  Show Cause Order at 1–2.)  This court finds no connection

whatsoever between Debtor's payment or non-payment and Appellants' purported good faith, and

Appellants fail to provide one.

Appellants' arguments concerning their lien with Debtor are similarly flabbergasting.

Appellants maintain that the June 8, 2005 lien "was not 'in derogation of' the [] Plan," because

the proceeds of the Mortgage Lender Litigation were not directed into the registry of the

bankruptcy court until July 26, 2005.  (Br. at 12–13.)  Appellants evidently ignore the

uncontested history of the case.  Appellee maintains, and Appellants do not deny, that it did not

learn about the Mortgage Lender Litigation until May 2005.  (Answer at 5.)  Appellee

subsequently moved the bankruptcy court to direct any and all proceeds from the litigation into

the court's registry, a request the bankruptcy court granted over Appellants' objection.  (*See* Plan

Mot. at 2; Plan Resp. ¶ 14; Order Granting Mot. to Implement Plan Regarding Proceeds of Old

Standard Lawsuit [filed in Bankr. Ct. July 26, 2005].)  In its astonishment, this court can only

employ a metaphor previously used by the bankruptcy court: "[i]f a bank robber tried to rob a

bank but was not successful, then, was no crime committed?" (Order at 9.)  This court is at an

utter loss to grasp Appellants' purpose or intentions in underscoring that the lien was not found to

be problematic until the moment it was discovered and brought to the bankruptcy court's

attention.  With these "arguments" handled, the court turns to Appellants' putatively more

substantive points.

> **b.**    ***Draconian Sanctions***

Appellants first argue that the bankruptcy court did not exercise "restraint and discretion"

as it must in exercising its power to impose sanctions.  (Br. at 13.)  It is markedly difficult to

distill Appellants' argument with any precision, but it appears they complain: (1) the bankruptcy

court had no authority under section 105 of the bankruptcy code to disallow Appellants' pre-

petition legal fees or their unsecured claim; (2) the bankruptcy court has "shown no restraint and

unabashedly attacked [Appellants] throughout its [o]rder purportedly to strengthen its argument

that [Appellants] acted egregiously and reckless [sic];" and (3) the sanction was unduly harsh

because "[t]he acts which are referenced as the bases for [the bankruptcy court's order] may be

described and viewed in a light which [sic] reflects a lack of bad faith and a lack of egregious or

vexatious behavior."  (*Id.* at 15–17.)  This court disagrees on all fronts.  In undertaking the

needlessly arduous task of responding to each of Appellants' arguments, this court increasingly

understands and appreciates the bankruptcy court's position as to Appellants' competency and

professionalism.

As to the bankruptcy court's authority to impose sanctions, "[t]he Tenth Circuit has

recognized that [s]ection 105(a) is intended to empower bankruptcy courts with the inherent

powers imbued in the federal district court to sanction conduct abusive of judicial process." *In re Vitt*, 250 B.R. at 723; *see also Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)*, 77 F.3d 278, 283–84 (9th Cir. 1996) ("There can be little doubt that bankruptcy courts have the inherent power to sanction vexatious conduct presented before the court."); *Ngan Gung Restaurant v. Official Comm. of Unsecured Creditors of Ngan Gung Restaurant (In re Ngan Gung Restaurant)*, 195 B.R. 593, 598–99 (S.D.N.Y. 1996) (stating "it is generally agreed" that bankruptcy courts may impose sanctions and noting section 105[a] as commonly-cited authority for that power). Pursuant to this inherent power, bankruptcy courts have "broad discretion to fashion appropriate sanctions for abuses of court processes." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). Moreover, as the bankruptcy court expressly pointed out in its order, *by statute*, a debtor may retain counsel under various terms and conditions, but:

> the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C.A. § 328(a) (West 2007). The court is hard-pressed to find a more appropriate set of facts to express the applicability of this statute than those presently before it and, therefore, finds no clear error in the bankruptcy court's action.

Even if these general truths were not sufficient to support the bankruptcy court's sanction, though this court believes they are, applicable case law is plainly supportive. By way of review, the bankruptcy court found that Appellants engaged in "unprofessional conduct in derogation of their client's best interests while advancing their own interests" and acted in "contravention of the

spirit of section 329(a)."[2]  (Order at 2, 13.)  This court has previously held that an attorney's

"conflicts of interest, standing alone, could justify the denial of all fees."  *Vann v. Berger (In re*

*Vann)*, 136 B.R. 863, 871 (D. Colo. 1992).  Moreover, "[e]ven compensation and reimbursement

which would otherwise be proper, may be reduced or entirely withheld under extraordinary

circumstances involving egregious misconduct by the party requesting such compensation and

reimbursement."  *In re Republic Fin. Corp.*, 128 B.R. 793, 801 (Bankr. N. D. Okla. 1991).  In

light of such legal precedent, this court cannot find clear error in the bankruptcy court's

disallowance of Appellants' fees.

　　　　Turning to the bankruptcy court's purported lack of restraint and the possibility that one

might be able to view Appellant's actions in a light that would not reflect bad faith, this court

finds no evidence of the requisite "'arbitrary, capricious, whimsical, or manifestly unreasonable

judgment'" to establish an abuse of discretion.  *In re Rambo*, 209 B.R. at 530 (quoting

*Oldenburg*, 34 F.3d at 1555).  This court has no impression, based on these or any other points

Appellants set forth, that the bankruptcy court made "a clear error of judgment" or in any way

"exceeded the balance of permissible choice in the circumstances."  *Joseph*, 229 B.R. at 799.  If

anything, this court is impressed by the great deal of restraint with which the bankruptcy court

---

[2]The referenced section concerns attorney disclosure and reads as follows:
Any attorney representing a debtor in a case under this title, or in connection with
such a case, whether or not such attorney applies for compensation under this title,
shall file with the court a statement of the compensation paid or agreed to be paid,
if such payment or agreement was made after one year before the date of the filing
of the petition, for services rendered or to be rendered in contemplation of or in
connection with the case by such attorney, and the source of such compensation.
11 U.S.C.A. § 329(a) (West 2007).

acted.  Further, as to the Appellants' contention that one might *possibly* opine Appellants did not

act in bad faith, this court cannot and does not find *clear error* where the bankruptcy court chose

a different view.

> ### c.      Due Process

Next, Appellants argue they were denied due process because — despite the bankruptcy

court's mention of "other sanctions," as appropriate under the circumstances in its order to show

cause — "there was no opportunity given to Appellants to be apprised of the exact amount of

sanctions claimed and no opportunity to be heard on the issue."  (Br. at 17.)  Appellants' only

support for this argument is a citation to the unpublished, non-binding, and wholly inapposite

*Hamblin v. Legacy Bank (In re Hamblin)*, BAP No. WO–99–059 2000 Bankr. LEXIS 244

(B.A.P. 10th Cir. 2000).[3]  In that case, the bankruptcy court imposed sanctions, based in part on:

(1) an affidavit presented to the court that sanctioned counsel had never seen and did not have the

opportunity to rebut; and (2) sanctioned counsel's behavior in a separate case previously before

the court.  *Id.* at *4.  This simply was not the case in Appellants' situation.

---

[3]Evidently citing a Colorado bankruptcy law newspaper to point to *Hamblin*, Appellants
also note that *Hamblin* cites the equally inapposite *Groetken v. Davis (In re Davis)*, 246 B.R. 646
(B.A.P. 10th Cir. 2000).  In that case, the bankruptcy court: (1) imposed joint and several
sanctions on multiple counsel without discussing relative fault; (2) asked counsel to explain a
gross conflict of interest, but never allowed counsel to give the requested explanation; and (3)
sanctioned counsel by ordering payment of opposing counsel's attorney fees, without performing
the required analysis to determine whether the fees were reasonable.  *In re Davis*, 246 B.R. at
657.  The facts in Appellants' case are markedly different.

Because none of the parties has gone to the trouble of setting forth the relevant standard, the court notes that "'the basic requirements of due process with respect to the assessment of costs, expenses, or attorney's fees are notice that such sanctions are being considered by the court and a subsequent opportunity to respond.'" *Endrex Invest., Inc. v. Mauna Lani Resort, Inc. (In re Endrex Invest., Inc.)*, 111 B.R. 939, 944 (D. Colo. 1990) (quoting *Braley v. Campbell*, 832 F.2d 1504, 1514 [10th Cir. 1987]).  In the instant case, at the May 9, 2006 hearing on the order to show cause, the bankruptcy court stated the various grounds for the sanctions it was considering for Appellants, which included the following:

> You nonetheless commenced litigation post[-]petition, continued representing and billing the client, and then you proceeded to take this lien of pre[-]petition, pre[-]petition [sic] fee claims, as well as post[-]petition fee claims, and took a lien, again, as I said earlier, by stealth.  Under applicable case law, you are not entitled to fees without being properly employed, without being properly vetted under the bankruptcy code and under the bankruptcy rules.  It's not considered proper.  It's considered improper.  It is grounds for denial of all fees.

(Tr. at 9 [filed in Bankr. Ct. June 6, 2006].)  Further, the court explained to Appellants "you're invited to put on whatever evidence you like or you're welcome to argue, but if there are any factual assertions, I would ask you to make those assertions under oath." (*Id.* at 6.)  Appellant Fairshter then testified at length as to Appellants' actions.  (*Id.* at 11–29.)  In light of this colloquy and testimony, this court finds Appellants' contention that they received "no notice of the potential for a complete disgorgement of all attorneys [sic] fees" to be deplorable and patently false.  (Br. at 17.)  Under no circumstances does this court find any evidence that the bankruptcy court abused its discretion or deprived Appellants of due process as to the nature of the sanctions it was considering.

-15-

### d.      Authority and Jurisdiction to Disallow Appellants' Claim

Appellants argue that the bankruptcy court's sanction is, in effect, tantamount to disallowing Appellants' unsecured claim for pre-petition fees under the Plan — a sanction the bankruptcy court had neither authority nor jurisdiction to impose. (*Id.* at 19–21.) Appellants assert that after a plan of reorganization is confirmed, the bankruptcy court's jurisdiction "ceases to exist other than for matters pertaining to implementation or execution of the plan." (*Id.* at 20.) Appellants then argue: (1) the bankruptcy court's continued jurisdiction arises under sections 105 and 1142 of the bankruptcy code; but (2) the bankruptcy court in this case did not assert its jurisdiction under section 1142, and therefore had no jurisdiction at all. (*Id.*) Appellants' internally inconsistent argument is positively confounding.

First, section 105 provides that:

> *The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.* No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, *taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.*

11 U.S.C.A. § 105(a) (West 2007) (emphasis added).  Appellants themselves concede that the court's jurisdiction survives under sections 105 and 1142. (Br. at 20.) Appellants also concede that the bankruptcy court issued sanctions "based solely on the [c]ourt's inherent power under [section] 105." (*Id.* at 15.) One need not be an expert in deductive reasoning or have mastered *modus ponendo ponens* to see quite clearly that by Appellants' own logic, the bankruptcy court properly established its continued jurisdiction.  This court finds no abuse of discretion in the

bankruptcy court's exercising jurisdiction under section 105 to address what it deemed to be an abuse of process that was interfering with the execution of the Plan. Because the bankruptcy court's jurisdiction was proper and appropriate under section 105, this court need not and does not address Appellants' inane argument that the bankruptcy court erred because it did not "determine[] that denial of [Appellants'] class 7(b) [sic] [was] 'necessary or appropriate' under [section] 1142." (*Id.* at 20.)

Appellants next argue that independent of jurisdiction, section 105 does not support the bankruptcy court's sanction, "disallowing Appellant's [sic] confirmed class 7(b) creditor's claim in its entirety." (*Id.* at 19.) The irony of Appellants' position is not lost on this court. Appellants seek refuge behind the same Plan they previously attempted to sidestep. Of course, this court ought not be surprised, as Appellants have evidently overlooked this irony before:

> MR. FAIRSHTER:   We still have the claim, the unsecured claim that's part of the [P]lan and the contingency fee arrangement.
>
> THE COURT:   The unsecured claim that you tried to get secured —
> MR. FAIRSHTER:   That is correct.
>
> THE COURT:   — without telling anybody, right?
> MR. FAIRSHTER:   That is correct.

(Tr. at 26.) In response to Appellants' obtuse obstinance, this court restates its findings set forth above that section 105 provides for sanctions, and those sanctions may take the form of disallowing attorney fees. (*See Analysis* § 2b, *supra.*) Given the nature and course of the

proceedings before it, the bankruptcy court made no clear error and did not abuse its direction in
sanctioning Appellants as it did, or in asserting jurisdiction and authority to do so.[4]

### e.   Disregarding a "Lawful Lien"

Appellants' final argument is that the pre-petition attorney fees at issue are properly the
subject of a lawful attorney's lien, which the bankruptcy court wrongfully ignored in: (1) its
imposition of sanctions; and (2) its prior order that the litigation proceeds be deposited into the
court's registry, so as to be distributed in accordance with the Plan.  (Br. at 21–22.)  Appellee
deftly responds that Appellants' lien was not lawful, citing *Colorado v. Carvell (In re Estate of*
*Benney)*, 790 P.2d 319 (Colo. 1990).  *Benney* sets forth the following helpful and instructive
description of Colorado law as to attorney's liens:

> There are two types of attorney's liens in Colorado, both created by statute: the
> "retaining lien" and the "charging lien. . . ."  The retaining lien [] gives the attorney
> the right to retain the client's papers until the general balance due for legal services
> is paid to the attorney, whether such matters grew out of the special matters then
> in [the attorney's] hands, or other legal matters. . . .  The charging lien . . . grants
> an attorney a lien on claims or choses in action . . ., on any judgment that the
> attorney obtained or assisted in obtaining in favor of the client, and on any legal
> claim filed by the attorney for fees due from the client.

-----

[4]Additionally, in passing, Appellants mention their surprise at this purported "first instance
that any party to the [b]ankruptcy [c]ase has challenged the legitimacy of [their] pre-petition
claim."  (Br. at 20.)  Appellants' argument is disingenuous.  As Appellee argued in 2005:
> [Appellants are] a scheduled unsecured class 7(b) creditor.  Debtor has, a [sic]
> various times under oath, and in written representations to this [c]ourt, stated that
> [Appellants'] claim had been settled; partially paid; or otherwise resolved.  *The*
> *true status of [Appellants'] allowed class 7(b) unsecured claim for pre-petition*
> *legal services remains open to serious question.*
(Plan Reply [emphasis added].)  Whether the attack on Appellants' claim is fresh or repeated is of
no particular consequence to this court.  Again, there was no abuse of discretion in this case.

790 P.2d at 322 (citations and internal quotation marks omitted).  As is particularly relevant in the instant case, "in contrast to the retaining lien, which secures the payment of attorney fees for all legal matters on which services have been rendered, the charging lien is limited to securing the payment of the reasonable value of attorney fees in the particular matter then being handled by the attorney." *Id.* at 323.  "Where the attorney obtains or assists in obtaining a judgment in favor of the client, therefore, *the charging lien extends only to attorney fees for those professional services rendered in obtaining the judgment and not for unrelated services.*" *Id.* (emphasis added).  Appellants' only response is that "[t]his is not the case." (Reply at 5.) Appellants then cite the statute providing for charging liens, which reads in relevant part that: "[i]n the case of demands in suit and in the case of judgments obtained in whole or in part by any attorney, such attorney may file, *with the clerk of the court wherein such charge is pending*, notice of his claim as lienor." Colo. Rev. Stat. § 12–5–119 (2006) (emphasis added).

As ought be entirely evident, Appellants' position is fundamentally flawed.  Any variance between the law as Appellee sets forth and as Appellants set forth is a distinction without a difference.  This court can find no way in which Appellants' representation of Debtor in the Mortgage Lender Litigation could be characterized as anything *other* than services "unrelated" to the pending bankruptcy case, and Appellants make no efforts to illuminate one.  (*See* Br.; Reply.) Further, the court struggles to discover how the Mortgage Lender Litigation, which took place in *California*, could possibly serve as the subject of a lien in *Colorado*, when by statute (as pointed out by Appellants, no less) a charging lien exists at the "court wherein such charge is pending."

(*See* Reply at 5–6.)  In light of the foregoing, this court finds no abuse of discretion where the bankruptcy court ignored Appellants' putative charging lien in imposing sanctions.[5]

**3.**      ***Conclusion***

Based on the foregoing it is therefore ORDERED that:

1.      Appellants' appeal (# 13) is DENIED.  The bankruptcy court's sanction is AFFIRMED.

Dated this 30th day of August, 2007

                                        BY THE COURT:


                                        s/ Edward W. Nottingham
                                        EDWARD W. NOTTINGHAM
                                        Chief United States District Judge

_____

[5]The court notes that in their reply brief, Appellants present several pages of superfluous chatter concerning a creditor's ability to file a breach of contract claim in response to a debtor's default in payment or other implementation of a confirmed Chapter 11 reorganization plan. (Reply at 6–8.)  To this court's knowledge, Appellants have not filed such a claim, but even if they had, such claim bears no relation to the motion presently at bar.  Accordingly, the court accords this matter no further attention.